UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| **Milos Torbica**, <br><br> Plaintiff, <br><br> v. <br><br> HORIZON BANK, <br><br> Defendant. | Cause No. 3:22-cv-20 |

## COMPLAINT FOR DAMAGES AND REQUEST FOR JURY TRIAL

Mr. Torbica is suing HORIZON for age, religious, or national origin discrimination in violation of the AGE DISCRIMINATION IN EMPLOYMENT ACT and TITLE VII OF THE CIVIL RIGHTS ACT OF 1964. This lawsuit is filed in the Northern District of Indiana because the events giving rise to this lawsuit occurred within the District. Mr. Torbica seeks all available relief and respectfully requests a trial by jury.

Respectfully submitted,

*/s/ Benjamin C. Ellis*
Benjamin C. Ellis
HKM Employment Attorneys LLP
320 N. Meridian St., Ste. 615
Indianapolis, IN 46204
P/F  |  (317) 824-9747
Email  |  bellis@hkm.com

1. **INTRODUCTION**

After nearly 40 years in the mortgage loan industry – the last six of which were with HORIZON as a Mortgage Sales Manager – Mr. Torbica was unceremoniously "managed out" in January 2021 by his new boss, Noe Najera. This termination was a shock, as Mr. Torbica had a strong performance history with HORIZON including good evaluations, prior responsibility for the bank's entire geographic territory, and an induction into its President's Club. At the time of his termination, he was the most qualified person to handle any area of HORIZON's mortgage department; including that his entire career involved sales responsibilities.

When viewed against HORIZON's decision to retain Mr. Torbica's peers, and in light of Najera's multiple inquiries into his retirement plans, its unlawful motives are apparent. Mary Kay Gaboyan and Larry Simmons are not only more junior than Mr. Torbica, but they are younger as well. Moreover, neither of them is a second-generation immigrant, nor are they members of the Serbian Orthodox Church (an uncommon Christian denomination). And Najera pressed Mr. Torbica about retirement at least five times, despite Mr. Torbica repeatedly explaining his plans to work for another 10 years.

But for Mr. Torbica's age, his national origin (Serbian), or his religion (Serbian Orthodox), he would still be employed with HORIZON. Given his age, and the reduction in mortgage loan positions generally, it is unlikely he will ever be able to find another comparable position.

Accordingly, Mr. Torbica now sues HORIZON for its violations of the ADEA or TITLE VII.

## 2. JURISDICTION & VENUE

1. This Court has original jurisdiction, under 28 U.S.C. § 1331, of Mr. Torbica's claims for violations of the ADEA and TITLE VII because those claims arise under the laws of the United States.

2. This Court is a proper venue for this lawsuit, under 28 U.S.C. § 1391(b), because the events underlying Mr. Torbica's claims occurred within the Northern District of Indiana.

## 3. PARTIES

### 3.1. Plaintiff

3. Plaintiff Milos Torbica resides in Lake County, Indiana.

### 3.2. Defendant

4. Defendant HORIZON BANK was, at all relevant times, a domestic financial institution (Business ID No. 201706231202067) with its principal place of business being in LaPorte County, Indiana.

4. **STATEMENT OF FACTS**

5. Mr. Torbica is a 62-year-old Serbian Orthodox, and a 38-year veteran in the mortgage loan industry.

6. Mr. Torbica worked for HORIZON as a VP-level Mortgage Sales Manager from July 1, 2014, until it terminated his employment on January 8, 2021.

7. During that time, Mr. Torbica always met or exceeded HORIZON's legitimate performance expectations.

8. Mr. Torbica would have received a 2020 performance rating of "Far Exceeds Expectations" but for the elimination of his position.

9. Mr. Torbica more than doubled his target goal $123M for mortgage loan originations in 2020 and brought in more than $292M.

10. Mr. Torbica also made several substantial and enduring contributions to HORIZON during my employment; these led HORIZON to select him for its President's Club.

11. For most of his tenure with HORIZON, he worked under Keene Taylor, its former SVP of Retail Lending.

12. Then, when Taylor announced his retirement, HORIZON promoted Noe Najera to the role in 2019.

13. Although Najera expressed support for Mr. Torbica during the lengthy transition period from Taylor, it now appears that – to borrow one of Najera's own terms – Najera was simply "managing [Mr. Torbica] out."

14. Upon information and belief, Najera similarly "managed out" his former boss Jill Sandilla when he was promoted past her in HORIZON's Consumer Loan Department.

15. Over the course of 2020, after Najera fully transitioned into the SVP role, he demonstrated his discriminatory intent through several patterns of behavior.

16. Najera was notably less responsive to Mr. Torbica than to the two other Mortgage Sales Managers – Mary Kay Gaboyan and Larry Simmons.

17. On some occasions, when Mr. Torbica later followed up with Najera, it was clear from Najera's responses that he had not even reviewed Mr. Torbica's requests.

18. By way of example, Najera simply ignored his July 2020 request to be paid at the same commission rate as his peers.

19. After Mr. Torbica noticed that Najera failed to timely respond to his voicemails and emails, often relating to time-sensitive underwriting approval requests, Mr. Torbica spoke about it with Gaboyan.

20. In contrast to his experience, Gaboyan told Mr. Torbica that Najera was very responsive to her; and she never waited days to receive a response.

21. Najera also flatly ignored Mr. Torbica's expertise during the implementation of ENCOMPASS DIGITAL MORTGAGE SOLUTION.

5

22. As is clear from the high staff turnover (including Gaboyan) caused by HORIZON's previous transition to MORTGAGEBOT, a quick, effective, and efficient implementation of ENCOMPASS was critical.

23. Mr. Torbica was one of the earliest users of ENCOMPASS (then GENESIS 2000), and previously served as an ENCOMPASS Systems Administrator at NEW STATE MORTGAGE.

24. This made Mr. Torbica the only HORIZON employee with both user and administrative experience with the system.

25. Although Mr. Torbica repeatedly identified this expertise during conference calls from Spring 2020 onward, with Najera, the Sales Managers, and senior operational and IT staff, Najera did not even acknowledge it.

26. Mr. Torbica further discovered that Najera was not only ignoring him but was also sidelining him with regard to his subordinates.

27. Specifically, Najera began modifying the commission structure for Mr. Torbica's Mortgage Loan Originators without consulting with or notifying me.

28. Mr. Torbica discovered this when compensation packages were sent out to the MLOs in late 2020 or early 2021.

29. Mr. Torbica had been heavily involved in this process in prior years.

30. Najera also repeatedly made age discriminatory remarks to Mr. Torbica.

6

31. On at least five occasions, Najera asked Mr. Torbica about his plans for retirement.

32. He did so despite that Mr. Torbica clearly stated his intent to work to age 70 (through 2029).

33. The first several times this issue came up, Mr. Torbica expressly informed Najera of the rationale for his retirement plans; Mr. Torbica planned to pay for seven years of his son's post-secondary education to become a pharmacist, and then to work several years beyond that.

34. Gaboyan and Simmons are both substantially younger than Mr. Torbica.

35. Neither is Serbian, and neither is a first-generation immigrant as Mr. Torbica is.

36. Neither Gaboyan nor Simmons are members of the Orthodox Church as Mr. Torbica is, and he expects to discovery that they are instead members of more mainstream Christian denominations.

37. Upon information and belief, Mr. Torbica's performance is objectively superior to that of Gaboyan and Simmons.

38. Mr. Torbica's team had greater mortgage loan originations per MLO (after accounting for geographic limitations), even though HORIZON paid them less (relative to their experience) than either Gaboyan's or Simmons's subordinates.

39. Mr. Torbica had less staff turnover.

40. And Mr. Torbica had greater responsibility, having previously managed mortgage loan originations for all of HORIZON's territory.

41. Mr. Torbica is the most experienced of the three Mortgage Sales Managers, and he even trained and supervised Simmons, HORIZON promoted Simmons to Sales Manager in 2020.

42. HORIZON's decision to promote Simmons shortly before HORIZON eliminated Mr. Torbica's position, indicates its intent to replace him with a younger employee.

43. HORIZON's claim that it made the decision to eliminate his position in the summer of 2020 reinforces this inference.

44. Moreover, despite these objectively superior qualifications, HORIZON paid Mr. Torbica less than the other Mortgage Sales Managers – receiving commissions equal to 1.5-2.5 basis points, rather than the 2-3 basis points they enjoy.

## 5. STATEMENT OF CLAIMS

### 5.1. Age discrimination in violation of the ADEA.

45. HORIZON terminated Mr. Torbica's employment on January 8, 2021.

46. Mr. Torbica is 62.

47. HORIZON willfully terminated Mr. Torbica because of his age.

48. HORIZON would not have terminated Mr. Torbica's employment if he was younger, but everything else had been the same.

49. Mr. Torbica was injured by HORIZON's age discriminatory termination of his employment.

### 5.2. Alternative Claim: Religious discrimination in violation of Title VII.

50. HORIZON terminated Mr. Torbica's employment on January 8, 2021.

51. Mr. Torbica is a member of the Serbian Orthodox Church.

52. HORIZON terminated Mr. Torbica because of his religion.

53. HORIZON would not have terminated Mr. Torbica's employment if he was not a member of the Serbian Orthodox Church, but everything else had been the same.

54. Mr. Torbica was injured by HORIZON's religious discriminatory termination of his employment.

### 5.3. Alternative Claim: National original discrimination in violation of Title VII.

55. HORIZON terminated Mr. Torbica's employment on January 8, 2021.

56. Mr. Torbica is of Serbian descent.

57. HORIZON terminated Mr. Torbica because of his national origin.

58. HORIZON would not have terminated Mr. Torbica's employment if he was not Serbian, but everything else had been the same.

59. Mr. Torbica was injured by HORIZON's national origin discriminatory termination of his employment.

## 6. PRAYER FOR RELIEF

Mr. Torbica respectfully requests that judgment be entered in his favor, and against HORIZON for its violations of the AGE DISCRIMINATION IN EMPLOYMENT ACT or TITLE VII OF THE CIVIL RIGHTS ACT OF 1964. He requests all available relief on his claims, including the following:

- a. Lost wages and benefits;
- b. Liquidated damages;
- c. Compensatory damages (including emotional distress);
- d. Punitive damages;
- e. Reinstatement (or front pay);
- f. Prejudgment and postjudgment interest; and
- g. Attorney fees and costs.

## 7. JURY DEMAND

As required by Fed R. Civ. P. 38(b), Mr. Torbica respectfully requests a trial by jury on all issues so triable.